UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20157-CR-ROSENBAUM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CECILIA CORDOBA,
MANUEL ROWINSKY, *et al.*,

        Defendants.
_____/

## ORDER ON DEFENDANTS' MOTION FOR DEPOSITIONS

This matter is before the Court on Defendant Cecilia Cordoba's Motion for Depositions Under Fed. R. Crim. P. 15 [D.E. 133] (joined by Defendant Manuel Rowinsky, *see* D.E. 136; D.E. 140, and Defendant Ramon Acosta, *see* D.E. 147). The Court has reviewed Cecilia Cordoba's Motion, as joined by her Co-defendants Rowinsky and Acosta ("Defendants' Motion"), and has heard oral argument on the Motion on August 16, 2012. After careful consideration, for the reasons set forth below, the Court now grants Defendants' Motion as it relates to Defendants Cecilia Cordoba and Ramon Acosta, contingent upon the filing of acceptable *Miranda* waivers for Defendants Paul and Marlon Cordoba, and defers ruling on Defendants' Motion as it regards Defendant Manuel Rowinsky.

### *II. Background*

Defendants Cecilia Cordoba, Manuel Rowinsky, and Ramon Acosta are charged by indictment along with five others: Paul Cordoba, Marlon Cordoba, Antonio Cordoba, Francisco

Gamero Medina, and Jefferson Castillo. The Superseding Indictment alleges that Defendants Paul Cordoba, Marlon Cordoba, Antonio Cordoba, Medina, Acosta, and Castillo conspired to import into the United States and to possess with intent to distribute cocaine. *See* D.E. 96 at Count 1, Count 4. It further states claims against combinations of the alleged co-conspirators for substantive counts of importing and possessing with intent to distribute cocaine. *See id.* at Counts 2, 3, 5, 6, 7, 8. These charges relate to Defendants' alleged efforts to use private Lear jets to carry the cocaine into the United States.

Defendants Cecilia Cordoba and Rowinsky, along with all of the other Defendants, are charged in Count 9 with a money-laundering conspiracy using the proceeds from illegal drug-trafficking activity. *See id.* at Count 9. In addition, the Superseding Indictment sets forth a separate money-laundering conspiracy violation against Defendants Paul and Marlon Cordoba, *see* D.E. 96 at Count 10; a substantive count of money laundering against Paul and Marlon Cordoba, *see id.* at Count 11; and a count for fraudulently obtaining an owner's certificate of registration against Defendant Paul Cordoba, *see id.* at Count 12.

Only Defendants Cecilia Cordoba, Rowinsky, Acosta, and Castillo have been arrested in the United States at this point. No other Defendants are currently in the United States. *See* D.E. 97 at 1. Defendants Paul and Marlon Cordoba fled the United States to Venezuela at the time of their attempted arrests. *See id.* According to the Government, after fleeing, they had been residing in Venezuela with the help of Oswaldo Cordoba, grandfather of Marlon, father of Paul, and husband of Cecilia. *See* D.E. 143 at 1. Paul Cordoba is also Defendant Cecilia Cordoba's son.

On June 14, 2012, Oswaldo Cordoba traveled to Miami to attempt to negotiate bail in this case for Marlon and Paul Cordoba. *See* D.E. 143 at 2. Although the Government asserts that an

agreement was reached, neither Marlon nor Paul Cordoba surrendered. *Id.* Consequently, an Interpol red notice was issued, and, on August 2, 2012, Paul and Marlon Cordoba were arrested as fugitives in Venezuela. *Id.* Before that occurred, however, Oswaldo Cordoba once again traveled to Miami on July 21, 2012, in an attempt to regain control of the airplane that Paul and Marlon Cordoba abandoned when they fled federal agents during the arrest attempt on March 5, 2012. *Id.* Oswaldo Cordoba remained in South Florida until August 2, 2012, the date that Paul and Marlon Cordoba were arrested on the Interpol notice. *Id.* at 3. At this point, according to the Government, as a result of the changing relationship between the United States and Venezuela, it is not clear whether Paul and Marlon Cordoba will be extradited.

On August 12, 2012, Defendant Cecilia Cordoba filed her Motion for Depositions [D.E. 133] in which she seeks to take the depositions of Oswaldo, Paul, and Marlon Cordoba. In support of her Motion, Defendant Cecilia Cordoba asserts that Oswaldo Cordoba serves as the president and chairman of the board of directors of Pacific Rim Energy, "Venezuela's leading provider of power company production and industrial construction services." D.E. 133 at 1. She further contends that at the time of the events alleged in the Superseding Indictment, Defendants Paul and Marlon Cordoba, "through Paul's company, One Way Jet LLC, and through other contractual relationships, performed regular and substantially remunerative work for Pacific Rim Energy and obtained additional revenue and capital investments from Pacific Rim Energy or Oswaldo Cordoba personally." *Id.* at 2. More specifically, Defendant Cecilia Cordoba claims that Defendant Paul Cordoba operated private flight services for Pacific Rim Energy throughout Venezuela and Florida, as well as other areas in the United States and Central and South America. *Id.* According to Defendant Cecilia Cordoba, "[a]t all times pertinent to the [Superseding Indictment], the sources of

regular income and capital acquisition by One Way Jet and Paul Cordoba were, and appeared to be, both very substantial and entirely legitimate due to the profitable nature of the businesses operated by Paul and Oswaldo Cordoba." *Id.*

Thus, Cecilia Cordoba urges, she requires the testimony of Oswaldo, Paul, and Marlon Cordoba to present her defense. Essentially, Cecilia Cordoba explains, the testimony would demonstrate that the money that she is charged with laundering derived from non-criminal sources, and further, even if the money had been tainted, she was under the reasonable belief that all transactions in which she engaged involved money that was earned through non-criminal means. *See id.* at 2-3.

Finally, Defendant Cecilia Cordoba asserts that in the absence of depositions, the testimony of Oswaldo, Paul, and Marlon Cordoba will not be available to her. *See id.* at 3-4. In this regard, Cecilia Cordoba claims that although Oswaldo Cordoba left the United States just over two weeks ago after having stayed here for ten days, he is now too weak and ill to travel back to the United States, and he lacks a reason to return, regardless, since Paul and Marlon Cordoba have been arrested in Venezuela. *Id.* Obviously, Cecilia Cordoba continues, Paul and Marlon Cordoba are currently unavailable because they are in custody in Venezuela, and no one anticipates that they will arrive in the United States prior to the August 27, 2012, scheduled start of the trial in this case.

Although the Government concedes the materiality of the testimony that Cecilia Cordoba seeks through the depositions, it challenges the unavailability of Oswaldo Cordoba and the showing made by Cecilia Cordoba with respect to the logistics of deposing Paul and Marlon Cordoba. More specifically, the Government notes that Oswaldo Cordoba was present in South Florida on June 14, 2012, and from July 21 through August 2, 2012, and that he has a valid visa to enter the United

States. *See* D.E. 143 at 3. Accordingly, the Government reasons, Cecilia Cordoba has failed to demonstrate that Oswaldo Cordoba is unavailable and must be deposed. As for Paul and Marlon Cordoba, the Government recognizes that, as Defendants in this case, Paul and Marlon Cordoba have rights under the Fifth and Sixth Amendments that would be implicated as a result of any effort to depose them in this case. *See* D.E. 143 at 3. Moreover, the Government complains, Defendants have provided no notice of where or when the depositions would occur, whether Venezuelan authorities would permit the depositions sought, what positions the attorneys for Marlon and Paul Cordoba would take with regard to the depositions, what the conditions for the depositions would be, whether it is even possible for the attorneys to obtain visas to allow them to travel to Venezuela for the depositions, and other related questions. *Id.* at 3-4. Finally, noting that trial in this matter is scheduled to begin on August 27, 2012, and Cecilia Cordoba's initial appearance in this case occurred on March 9, 2012, the Government asserts that the Motion is untimely and should be denied for that reason alone.

On August 16, 2012, the Court held oral argument on Defendants' Motion. During the hearing, counsel for Defendant Cecilia Cordoba addressed the timeliness issue first and explained that, until the August 2, 2012, arrests of Paul and Marlon Cordoba, Paul and Marlon Cordoba were in fugitive status. As a result, he could not conduct their depositions. As for Oswaldo Cordoba, until Defendants Paul and Marlon Cordoba were arrested, defense counsel stated, he believed that Oswaldo Cordoba would voluntarily return to the United States as necessary for trial. Now that his son and grandson have been arrested, though, Oswaldo Cordoba does not plan on returning to this country, according to defense counsel, particularly because he is an older man in ill health, and traveling is very taxing for him.

Defense counsel further represented that he expected to be able to obtain and provide *Miranda* waivers of Defendants Paul and Marlon Cordoba before seeking to make arrangements to conduct the depositions. In addition, he represented that video depositions would suffice from Cecilia Cordoba's viewpoint, with counsel for all parties present in the United States, and he suggested that arrangements for the depositions could be made immediately if the Court grants Defendants' Motion. Finally, Cecilia Cordoba, Manuel Rowinsky, and Ramon Acosta acknowledged their understanding that if the Court granted Defendants' Motion, that could significantly delay trial in this case. While Cecilia Cordoba and Acosta wished to waive their right to a speedy trial in order to obtain the deposition testimony of Oswaldo, Paul, and Marlon Cordoba, Defendant Manuel Rowinsky declined to waive his right to a speedy trial for the purpose of conducting the requested depositions. Because granting Defendants' Motion would necessarily delay trial in this case, the Court denied Defendants' Motion as to Defendant Rowinsky.

On August 20, 2012, however, Defendant Rowinsky filed a motion with the Court seeking to reinstate his joinder in Defendants' Motion. In his latest motion, Defendant Rowinsky states that he has reconsidered his position, and, understanding that granting Defendants' Motion may result in a substantial delay of trial, wishes to waive his right to a speedy trial and to persist in Defendants' Motion. The August 20 motion further indicates that a written waiver of speedy trial rights will follow on August 21, 2012.

## *II. Discussion*

Rule 15(a)(1), Fed. R. Crim. P., governs the taking of depositions in criminal cases. That rule provides, in relevant part, that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances

and in the interest of justice. . . ." Fed. R. Crim. P. 15(a)(1). Despite this rule, "[d]epositions generally are disfavored in criminal cases." *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993). This status results from the lack of the same procedural safeguards that would otherwise be present in the United States and because of the factfinder's usual inability to observe the demeanor of deposition witnesses, which corresponds to a threat to a defendant's Sixth Amendment right to confrontation. *Id.* at 1551-52.

Nevertheless, as Rule 15(a)(1) states, depositions are available upon a showing of exceptional circumstances and in the interest of justice. In the Eleventh Circuit, courts consider three factors in determining whether "exceptional circumstances" warrant the taking of depositions: whether (1) the witness is unavailable to testify at trial; (2) injustice will result because testimony material to the movant's case will be absent; and (3) countervailing factors render taking the deposition unjust to the nonmoving party. *United States v. Ramos*, 45 F.3d 1519, 1522-23 (11th Cir. 1995) (emphasis omitted) (citing *Drogoul*, 1 F.3d at 1554). The party seeking the depositions bears the burden of demonstrating "exceptional circumstances." *Drogoul*, 1 F.3d at 1553.

### A. Unavailability

A "substantial likelihood of unavailability" exists when the proposed deponent is beyond the subpoena powers of the United States and has indicated his unwillingness to testify at trial. *Ramos*, 45 F.3d at 1523. Indeed, even when a proposed deponent has declared his willingness to testify at trial, he may nonetheless be found to be unavailable if he cannot be subpoenaed upon changing his mind. *Id.* The party seeking the depositions may show the probable unavailability of a prospective deponent "through affidavits or otherwise." *Drogoul*, 1 F.3d at 1553 (quoting *United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir.), *cert. denied*, 486 U.S. 1026 (1988)) (internal quotation

marks omitted). That demonstration, however, is not required to be conclusive before a deposition may be taken. *Id.* (citing *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985)). Instead, "[a] more concrete showing of unavailability . . . may be required at the time of trial before a deposition will be admitted in evidence." *Id.* (citing Fed. R. Crim. P. 15(e)[1]).

Here, Paul and Marlon Cordoba are undebatably unavailable. They are both presently in custody in Venezuela, and the Government concedes that it does not know whether they will ever be extradited to the United States. Thus, clearly, neither is subject to the subpoena powers of the United States. As for Oswaldo Cordoba, the Government contends that he is available, as demonstrated by his two recent trips to the United States. While such a finding is tempting — particularly in view of the fact that Oswaldo Cordoba is Defendant Cecilia Cordoba's husband, so presumably, Defendant Cecilia Cordoba is not without some influence regarding Oswaldo's willingness to testify at her trial — the fact remains that Oswaldo Cordoba is not a United States citizen, and he resides in Venezuela. As a result, he is not subject to the subpoena powers of the United States. Moreover, he is an elderly man who defense counsel states is suffering from serious medical conditions that might be adversely affected by additional travel to the United States. Finally, because, as explained below, the Court concludes that the depositions of Paul and Marlon Cordoba should proceed, depositions in Venezuela will have to occur, even if Oswaldo Cordoba is not deposed. Adding one more deponent to the list does not impose substantial additional burdens. *See Drogoul*, 1 F.3d at 1557 (concluding that deposing six witnesses in Italy who were otherwise willing to testify at trial was warranted where the parties would be deposing seven other witnesses in Italy who were not willing to testify voluntarily).

---

[1] Currently, Rule 15(f), Fed. R. Crim. P., governs use of a deposition at trial.

*B. Materiality*

Defendant Cecilia Cordoba is charged with laundering the proceeds of Paul and Marlon Cordoba's alleged drug-trafficking escapades. As the Government properly concedes, testimony of Paul and Marlon Cordoba that they were not engaged in drug-trafficking activities, and, even if they were, that Cecilia Cordoba did not know when she performed the challenged financial transactions, is centrally relevant the Government's allegations against Cecilia Cordoba. Similarly, Oswaldo Cordoba's expected testimony that Paul and Marlon Cordoba flew in connection with Oswaldo Cordoba's business is material both to whether Paul and Marlon Cordoba were involved in drug-trafficking and whether, if so, it was reasonable for Cecilia Cordoba not to have knowledge of their drug-trafficking activities when she conducted the financial transactions at issue. Where, as here, the proffered testimony "goes to the very heart" of the case, it satisfies the materiality requirement under Rule 15(a)(1). *See Drogoul*, 1 F.3d at 1554.

*C. Countervailing Factors*

In this case, the Government asserts several countervailing factors that it suggests tip the scales of justice against holding the depositions. First, the Government complains about the timing of Defendants' Motion, having been filed two weeks prior to the start of trial when Defendant Cecilia Cordoba had her initial appearance in this case more than five months earlier. While the Court also is concerned about the timing of Defendants' Motion, the Court nonetheless finds that at the August 16, 2012, hearing, Defendants sufficiently explained why they did not seek the requested relief sooner.

Second, the Government rightly expresses concerns that Paul and Marlon Cordoba are Defendants in this case and, as such, have important rights that must be respected. As a result, even

if the Court authorizes the depositions and the parties proceed to Venezuela, there is no guarantee that either Paul or Marlon Cordoba will provide testimony. The Court views this issue with great concern, although the Court notes that on August 20, 2012, Defendant Cecilia Cordoba filed the affidavit of Paul Cordoba stating that he wishes to waive his Fifth Amendment right to remain silent and that he would testify on her behalf if given the opportunity. D.E. 161-1. While Defendant Paul Cordoba's affidavit provides a good start, this Court would require that Defendants Marlon and Paul Cordoba be read their full-blown *Miranda* rights (Fifth and Sixth Amendment rights) and agree to them in writing prior this Court's authorizing of the depositions to occur. Upon receipt of the executed *Miranda* rights waivers, this Court would find the Government's second concern appropriately addressed.

Third, the Government argues that "foreign deposition testimony, because of the absence of a sanction for perjury, is suspect." D.E. 143 at 4 (quoting *United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir. 1988) (internal quotation marks omitted)). The Eleventh Circuit has previously found this concern to be insufficient to outweigh the taking of a deposition where the deponent has been demonstrated to be unavailable and the testimony sought is material. *See Ramos*, 45 F.3d at 1523-24. Moreover, in this case, Defendants Paul and Marlon Cordoba are currently in Venezuelan custody in connection with this case. Thus, they must be aware of the possibility of extradition on the pending charges. As a result, if they are proven to perjure themselves and they are ultimately extradited, they will face consequences of their perjury.

Fourth, the Government contends that the depositions will affect the jury's ability to assess demeanor. As the Eleventh Circuit has expressly recognized, however, videotaping may be employed to enable a jury to observe a witness's demeanor. *Drogoul*, 1 F.3d at 1555.

Fifth, the Government suggests that the depositions will impair the Government's ability to effectively cross examine Defendants Paul and Marlon Cordoba because the Government "will have to question these fugitive defendant witnesses at a time when it hasn't heard the defense attorneys' opening statements, nor the defense attorneys' cross-examination of the government witnesses, so the government won't know exactly what the defendants' defense to the charges entails, and therefore won't be able to plan and construct its cross-examination of these fugitive defendant witnesses to counter that defense." D.E. 143 at 5. This concern, however, will always be present in any deposition of a defense witness. Yet Rule 15(a) nonetheless allows for such depositions upon satisfying the standard of exceptional circumstances. Furthermore, as a practical matter, Defendants' defense is no secret in this case — particularly because of the pending motion where Defendants had to set forth the materiality of the testimony they seek.

Sixth, the Government points to Rule 15(b), Fed. R. Crim. P., and faults Defendants for failing to provide written notice of the deposition's date and location. The Eleventh Circuit, however, has not found such circumstances to warrant denial of a motion for depositions that is otherwise sufficient. *See Ramos*, 45 F.3d at 1523. Moreover, in this case, considering that two of the potential deponents are in Venezuelan custody as a result of United States action, it would have been difficult — and probably inadvisable from the standpoint of diplomatic relations — for Defendants to have arranged for the depositions without the Government's assistance.

Finally, the Government worries that it may not be able to secure visas for its prosecutors to travel to Venezuela for the depositions. But the Government has not yet tried, and, even if the Government is unable to obtain the necessary visas, it may still be possible to conduct the depositions by videoconference with all attorneys present in the United States. Therefore, at this

time, the Court finds insufficient countervailing factors to justify denial of Defendants' Motion.

### *III.  Conclusion*

For the foregoing reasons, Defendant Cecilia Cordoba's Motion for Depositions Under Fed. R. Crim. P. 15 [D.E. 133] is **GRANTED** as set forth below, with respect to Defendants Cecilia Cordoba and Ramon Acosta:

1. By **August 31, 2012**, Defendants Cecilia Cordoba and Ramon Acosta shall file with this Court the written *Miranda* waivers (Fifth and Sixth Amendment rights) of Defendants Paul and Marlon Cordoba indicating their willingness to testify if depositions in this case are held. If the waivers are not filed, Defendants' Motion shall be **DENIED** at that time;

2. If the waivers are timely filed, the Government and Defendants shall work together to schedule the depositions of Oswaldo, Paul, and Marlon Cordoba as soon as possible, but no later than **December 31, 2012**;

3. On **October 1, November 1,** and **November 30, 2012**, the parties shall provide written reports to the Court regarding their progress in scheduling the depositions;

4. Defendants shall not be permitted to attend the depositions physically but shall be entitled to view them and to participate in them by videoconference. In this regard, under Rule 15(c)(3), the Court makes the following findings:

    A. The witnesses' testimony could provide substantial proof of a material fact in a felony prosecution;

    B. There is a substantial likelihood that the witnesses' attendance at trial cannot be obtained;

    C. The witnesses' presence for a deposition in the United States cannot be obtained;

D. Defendants Cecilia Cordoba and Ramon Acosta cannot be present for the depositions because no reasonable conditions will assure an appearance at trial; and

E. Defendants can meaningfully participate in the deposition through reasonable means.

5. Trial in this matter for Defendants Cecilia Cordoba and Ramon Acosta is continued until two weeks after the depositions are completed or the two-week trial period beginning **January 14, 2013**, whichever comes first.

6. In order to allow Defendants to take the depositions as required in this matter, the interests of justice served by a continuance of trial as set forth above outweigh any interest of the public or Defendants in a speedy trial, and, therefore, the period of delay resulting from Defendants' Motion [D.E. 133] through and including the date trial commences — is excludable time under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(7).

As to Defendant Manuel Rowinsky, a ruling on Defendant Cecilia Cordoba's Motion for Depositions Under Fed. R. Crim. P. 15 [D.E. 133] is hereby **DEFERRED** until such time that the Court receives an intelligent, informed, and voluntary waiver of Defendant Rowinsky's speedy trial rights. In the meantime, Defendant Rowinsky remains scheduled to proceed to trial during the two-week trial period beginning **August 27, 2012.**

**DONE and ORDERED** at Fort Lauderdale, Florida, this 20th day of August 2012.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies: Counsel of Record