**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-20157-CR-ROSENBAUM**

UNITED STATES OF AMERICA,

Plaintiff,

v.

CECILIA CORDOBA,
MANUEL ROWINSKY, *et al.*,

Defendants.
__________________________________/

## ORDER ON DEFENDANT'S MOTION *IN LIMINE*

This matter is before the Court on Defendant Manuel Rowinsky's Motion *in Limine* to Exclude Testimony of the Government's Proposed Expert Witness S.A. Deborah Morrisey [D.E. 137], as joined by *ore tenus* motion of Defendant Cecilia Cordoba. The Court has reviewed Defendant's Motion *in Limine*, had held an evidentiary hearing on the Motion on August 16, 2012, and has likewise heard oral argument on the Motion during the August 16 hearing. As announced during the hearing, the Court denies Defendant's Motion *in Limine* for the reasons set forth on the record at the August 16, 2012, hearing and further memorialized in this Order.

### *II. Background*

Defendants Cecilia Cordoba, Manuel Rowinsky, and Ramon Acosta are charged by indictment along with five others: Paul Cordoba, Marlon Cordoba, Antonio Cordoba, Francisco Gamero Medina, and Jefferson Castillo. The Superseding Indictment alleges that Defendants Paul Cordoba, Marlon Cordoba, Antonio Cordoba, Medina, Acosta, and Castillo conspired to import into

the United States and to possess with intent to distribute cocaine. *See* D.E. 96 at Count 1, Count 4. It further states claims against combinations of the alleged co-conspirators for substantive counts of importing and possessing with intent to distribute cocaine. *See id.* at Counts 2, 3, 5, 6, 7, 8. These charges relate to Defendants' alleged efforts to use private Lear jets to carry the cocaine into the United States.

Defendants Cecilia Cordoba and Rowinsky, along with all of the other Defendants, are charged in Count 9 with a money-laundering conspiracy using the proceeds from illegal drug-trafficking activity. *See id.* at Count 9. In addition, the Superseding Indictment sets forth a separate money-laundering conspiracy violation against Defendants Paul and Marlon Cordoba, *see* D.E. 96 at Count 10; a substantive count of money laundering against Paul and Marlon Cordoba, *see id.* at Count 11; and a count for fraudulently obtaining an owner's certificate of registration against Defendant Paul Cordoba, *see id.* at Count 12.

On August 6, 2012, the Government filed a Disclosure of Expert Witnesses [D.E. 121], in which it identified Deborah Morrisey as an expert in the area of money laundering. The Disclosure further contained Morrisey's résumé and specified that Morrisey would testify "as to the various forms of money laundering and the manner by which individuals and groups of individuals launder illicit proceeds[,] [as well as] to the analysis of several accounts and purchases, and the detection of the defendants' laundering of money through accounts." D.E. 121 at 1-2.

In response, Defendant Rowinsky filed his Motion *in Limine* to Exclude Testimony of the Government's Proposed Expert Witness S.A. Deborah Morrisey [D.E. 137]. On August 16, 2012, the Court held an evidentiary hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), on Defendant Rowinsky's Motion. At the beginning of the hearing,

Defendant Cecilia Cordoba made an *ore tenus* motion to join Defendant Rowinsky's Motion, and the Court granted her motion.

During the evidentiary hearing, both Defendants conceded the qualifications of Morrisey to testify as an expert in the area of money laundering.[1] Therefore, Morrisey's testimony focused on her methodology, which she explained in detail during the hearing. Based on her experience and knowledge of generally accepted terms and concepts used in the field of money laundering, Morrisey identified three steps of the money-laundering process: (1) placement of the ill-gotten gains into the banking system; (2) layering, sometimes referred to as the "shell game" stage; and (3) integration, where the money is converted into a form to make it appear legitimate. Besides further elaborating on these three stages of money laundering, Morissey testified regarding triggers for the required filing of currency transaction reports and currency and monetary instrument reports. She then reviewed summaries of financial transactions that occurred in the bank accounts used by Defendants in this case, pointing out what she viewed as transactions reflecting each of the three steps of money laundering.

At the conclusion of Morrisey's testimony, Defendant Rowinsky relied on his argument as

---

[1]Morrisey's *curriculum vitae* describes her as "[a]ward winning **Certified Anti-Money Laundering Specialist** and Investigator with 26 years federal law enforcement experience[;] [s]enior advisor to top financial executives and government leaders worldwide to provide intelligence and guidance in fighting sophisticated international fraud and other financial crimes perpetrated by transnational criminal organizations." D.E. 1292 at 18 (emphasis in original). It further identifies her as a "[n]ationally **recognized subject matter expert . . . in financial investigations and money laundering** [who is] frequently enlisted by Headquarters to review and provide input to pending legislation, prepare Congressional testimony, brief Congressional sub-committee members, and represent ICE in foreign and domestic meetings . . . and instruct personnel on money laundering worldwide." *Id.* (emphasis in original). She has served as a special agent for United States Immigration and Customs Enforcement since 1988 and as a supervisory special agent/group supervisor for Homeland Security Investigations since 2002.

briefed. Defendant Cecilia Cordoba, however, wished to present additional argument, and the Court heard from her counsel. After considering the testimony, the briefs, and the remarks of counsel, the Court denied Defendant Rowinsky's Motion *in Limine* to Exclude Testimony of the Government's Proposed Expert Witness S.A. Deborah Morrisey [D.E. 137]. As noted above, this Order memorializes that ruling.

## ***II. Discussion***

When a party proffers the testimony of an expert under Rule 702 of the Federal Rules of Evidence, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). In making the determination of whether expert testimony and any report prepared by the expert may be admitted, the Court engages in a three-part inquiry of whether (1) the expert is qualified to testify competently regarding the matters she intends to address; (2) the methodology by which the expert reaches her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The Eleventh Circuit refers to each of these requirements as the "qualifications, "reliability," and "helpfulness" prongs. *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). While some overlap exists among these requirements, the court must individually analyze each concept. *Id.*

In a district court's analysis under *Daubert*, the court must take on the role of a gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Under this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). But, importantly, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at1341; *Maiz*, 253 F.3d at 666 (quoting *Alison*, 184 F.3d at 1311). Thus, the district court cannot exclude an expert because it believes the expert lacks personal credibility. *Rink*, 400 F.3d at 1293, n.7.

Here, as explained below, Morrisey's testimony passes muster under *Daubert*. Defendants' challenges, which relate principally to the persuasiveness of her testimony, are appropriately addressed through "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

**A. Morrisey is Qualified to Testify as an Expert in Money Laundering**

An expert may be qualified "by knowledge, skill, experience, training, or education." *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) (citing Fed. R. Evid. 702). Moreover, "[a]n expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand." *Id.* (citing *Maiz*, 253 F.3d at 665). Where an expert does have congruent experience, "[t]he Committee Note to the 2000 Amendments of Rule 702 . . . explains that '[n]othing in this amendment is intended to suggest that experience alone ... may not provide a sufficient foundation for expert testimony.'" *Frazier*, 387 F.3d at 1261 (quoting Fed. R.

Evid. 702 Advisory Committee's note (2000 amends.)).

Determining whether a witness is qualified to testify as an expert "requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002). In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters she intends to address. *City of Tuscaloosa*, 158 F.3d at 562-63. This inquiry requires an expert to satisfy a relatively low threshold. *Martinez v. Altec Indus., Inc.*, 2005 WL 1862677, *3 (M.D. Fla. Aug. 3, 2005) (quoting *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) ("As long as some reasonable indication of qualifications is adduced, . . . qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity"), *superseded by rule on other grounds as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002)); *see also Johnson v. Big Lots Stores, Inc.*, 2008 WL 1930681, *14 (E.D. La. Apr. 29, 2008) (summarizing *Rushing*, 185 F.3d at 507 n.10, as "explaining that after an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination"). After the district court undertakes a review of all of the relevant issues and an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion. *See Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976).[2]

In this case, Morrisey's on-the-job experience in investigating money laundering as a special agent with ICE for the past 24 years — not to mention her other experience — suffices to qualify

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

her to testify as an expert in money laundering under the relatively low qualifications threshold of *Daubert*. Indeed, Defendants appropriately concede as much.

## B. Morrisey's Testimony Satisfies the *Daubert* Reliability Inquiry

In determining the reliability of an expert witness, the Court considers such factors as "(1) whether the expert's theory can be tested and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341 (citing *McCorvey*, 298 F.3d at 1256). These factors, however, are not exhaustive of the different considerations that a court may undertake in its determination of the reliability of an expert opinion under a Rule 702 analysis. *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)).

Assessing reliability in any "given case will depend . . . on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) (quoting *Kumho Tire Co., Ltd.*, 526 U.S. at 150) (internal quotations omitted). "Standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC,* 555 F.3d 1331, 1338 (11th Cir. 2009) (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 151 (1999)). When looking at the reliability of non-scientific expert testimony, "the trial judge must have considerable leeway in deciding . . . whether particular expert testimony is reliable[ ]" and "may decide that nonscientific expert testimony is reliable based upon [the purported expert's] personal knowledge or experience." *Id.* (internal citation omitted); *see also Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1336 (11th Cir. 2010) (citing *Brown*, 415 F.3d 1257). Indeed, of the four non-exhaustive *Daubert* factors identified above,

when the expert's reliability focuses on experience, courts "particularly emphasize" general acceptance in the community. *United States v. Frazier*, 387 F.3d 1244, 1298-99 (11th Cir. 2004) (citation omitted).

______In this case, Morrisey testified sufficiently to establish that in analyzing the transactions at issue here, she has employed methodology that is accepted in the money-laundering-investigation community. She described each of the steps of the money-laundering process, identifying transactions that she viewed as examples of each such step. Under *Daubert*, any shortcomings that Defendants argue exist in her analysis are appropriately addressed by cross-examination and the presentation of contrary evidence, not by exclusion of the testimony altogether.

<u>3. Morrisey's Testimony is Helpful to the Trier of Fact</u>

According to the Eleventh Circuit, expert testimony is helpful to the trier of fact only "if it concerns matters that are beyond the understanding of the average lay person." *Frazier,* 387 F.3d at 1262; *see also King v. Cessna Aircraft Co.*, 03-CIV-20482, 2010 WL 1980861, *5 (S.D. Fla. May 18, 2010). The Eleventh Circuit has further "previously recognized that admission of 'expert testimony on [the concealment] practices of criminals' is appropriate for educating lay jurors on the significance of relevant facts." *United States v. Sarcona*, 457 F. App'x 806, 815-16 (11th Cir. 2012) (quotation omitted). Indeed, in *Sarcona*, the Eleventh Circuit noted with approval that "[o]ther Circuits have upheld admission of expert testimony for the specific purpose of educating jurors about money laundering." *Id.* (citing *United States v. Nektalov*, 461 F.3d 309, 318 (2d Cir. 2006); *United States v. Wilson*, 355 F.3d 358, 362 (5th Cir. 2003)).

Nor is it surprising that courts would so conclude. Particularly because money laundering by its nature often involves large numbers of financial transactions and multiple bank accounts, the

testimony of an expert who is experienced in sorting through such transactions can be helpful to the trier of fact. Based on the rulings of the Eleventh Circuit and other courts, as well as on the nature of Morrisey's proposed expert testimony, as demonstrated during the *Daubert* hearing held on August 16, 2012, the Court finds that Morrisey's testimony satisfies *Daubert*'s requirement that it be helpful to the trier of fact.

### *III. Conclusion*

For the foregoing reasons, Defendant Manuel Rowinsky's Motion *in Limine* to Exclude Testimony of the Government's Proposed Expert Witness S.A. Deborah Morrisey [D.E. 137], as joined by *ore tenus* motion of Defendant Cecilia Cordoba, is **DENIED**.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 21st day of August 2012.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies: Counsel of Record