# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20157-CR-ROSENBAUM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CECILIA CORDOBA, *et al.*,

        Defendants.

_____/

## ORDER

This matter is before the Court once again on Defendant Cecilia Cordoba's Motion to Take Rule 15, Fed. R. Crim. P., Depositions [D.E. 133] and the subsequent status reports and briefing on the feasibility of conducting the depositions that this Court authorized in its August 20, 2012, Order granting Defendant Cecilia Cordoba's Motion [D.E. 167]. Although the depositions contemplated in the August 20, 2012, Order were originally to have been completed by December 31, 2012, the Court extended the time for the depositions to be taken, continuing trial until the two-week period beginning on May 6, 2013. Apparently, the parties have had some miscommunication over who was doing what to secure the three foreign depositions authorized by the August 20, 2012, Order. As a result, no depositions have yet been held, and none have been scheduled.

In its most recent filing, however, the Government provides information that sheds some light on what, from the standpoint of diplomatic concerns, must be done to secure the depositions. Specifically, the Government proposes that Defendants must complete the following tasks before the depositions may proceed:

> (1) Defendants must provide notice of the time and place of taking the depositions;
>
> (2) Defendants must show that the taking of the depositions has been authorized by the appropriate government officials in Venezuela;
>
> (3) Defendants must arrange for the presence of the stenographer, videographer, interpreter, witnesses, and any other necessary people for the depositions to proceed; and
>
> (4) Defendants must specify who will give the oath, what facilities will be used to take the depositions, what the layout and capabilities of those facilities are, what court-reporting firm will take the depositions, or whether and how the depositions would be video recorded and transmitted.

D.E. 233 at ¶¶ 12-18.

In addition, the Government again suggests that the depositions should occur at the United States Embassy in Venezuela, although the Government does not know at this time about the availability of visas to travel to Venezuela and notes that, as a result of the current political climate in Venezuela, even if visas may be obtained for defense counsel, the Government may not be able to procure official visas to enable the prosecutors in this case to travel to Venezuela for the depositions. If that turns out to be the case, the Government asserts, the depositions should not be permitted to proceed because, the Government contends, it cannot adequately depose the witnesses by videoconference.

In addressing these considerations, the Court first notes that two of the witnesses to be deposed — Paul and Marlon Cordoba ("Cordobas") — are currently incarcerated in Venezuela on the United States's request for their extradition. Although the Government states that "it appears unlikely . . . that they will be extradited," the fact remains that they are now in a Venezuelan jail.

Thus, it is clear that for the depositions to proceed under the current circumstances, at a minimum, the authorization of some Venezuelan official will be required. Moreover, even if the Cordobas were not in jail, it would still be, at the very least, highly advisable to obtain the authorization of the Venezuelan government before conducting depositions in Venezuela. In the absence of such authorization, the potential for diplomatic and other issues to arise and to interfere with the desired depositions is tremendous. *See, e.g., United States v. Khan*, Case No. 11-20331-CR-SCOLA., D.E. 745 (S.D. Fla. Feb. 25, 2013) ("The Court notes that all of [the] problems could have been avoided had the Defendant complied with the Court's initial condition that the Defendant obtain the explicit approval of the Pakistani government before the depositions started"). For the parties to travel to Venezuela only to be denied the opportunity to proceed with the depositions would be wasteful of both resources and time. Therefore, the Court will require Defendants to advise the Court which Venezuelan official or officials have agreed to the depositions.

The Court, however, declines to require Defendants to conduct the depositions at the United States embassy. The Government has explained that it will arrest the Cordobas if they appear at the United States embassy, and the Cordobas have already demonstrated that they will not return voluntarily to the United States. As a result, making the holding of the depositions at the embassy a prerequisite for conducting the depositions at all would be tantamount to denying the depositions.

As for the Government's complaints about proceeding by videoconference, this issue is premature at this time. Should depositions be scheduled by Defendants and approved by the Venezuelan government, and, further, should defense counsel or Government attorneys, or both, not be permitted to enter Venezuela, the Court can address that issue at that time. The Court, nevertheless, notes that it finds instructive Judge Scola's opinion on this issue as it arose in *Khan*,

Case No. 11-20331-CR-SCOLA, D.E. 562 (S.D. Fla. Nov. 2, 2012):

> The government's remaining arguments are logistical concerns that can be addressed; to the extent that the solutions are not perfect, the imperfect solutions do not constitute "*significant* countervailing factors which would render the taking of the deposition unjust." *Drogoul*, 1 F.3d at 1552 (emphasis added).
>
> The government argues that the lack of government or court personnel means that "there would be absolutely no effective way for the government or this Court to monitor [the deposition room] for abuses of the sequestration order or other forms of witness 'coaching.'" (ECF No. 543 at ¶ 13.) A camera showing and recording the deposition room will allow the government and this Court to ensure that the witness is not influenced by others.
>
> The government's next concern—that witnesses could not be adequately identified and thus someone could impersonate one of the five individuals the defense seeks to depose—is also addressable. A Pakistan official must be present in the deposition to verify the identity of the witness through official Pakistan government identification.
>
> \* \* \* \* \*
>
> The government's concern that the deposition will not be able to take place before an appropriate officer is also anticipated by the governing rules. As mentioned previously, Rule 15(e) allows the depositions to be taken in the same manner as a deposition in a civil case. Rule 30(b)(5) of the Federal Rules of Civil Procedure provides that the "deposition must be conducted before an officer appointed or designated under Rule 28." Rule 28(b)(C) in turn provides that a deposition in a foreign country may be taken "before a person authorized to administer oaths . . . in the place of the examination." The Court will require that a Pakistan official authorized to administer an oath be present at the deposition. This official will serve as the person before whom the deposition is taken under Rule 30(b)(5). To address the government's concerns about a court reporter, the Court will require that a court reporter be in Miami to transcribe the depositions live. The government's concerns about translation issues are overblown and premature. As in *Drogoul*, "[n]othing in the record suggests that a correct translation cannot be obtained in this case, or that the [government] will object to the translation" of the interpreter used by the defense attorneys during the

> deposition. *Drogoul*, 1 F.3d at 1554. Using interpreters to translate is "an established part of practice in federal courts." *Id.* Moreover, since the depositions will be recorded, an appropriate translator could be appointed to review the recording and resolve any dispute that might arise. *See id.* In *Salim*, the court approved the taking and using of Rule 15 depositions despite multiple languages having to be translated for the witness to understand questions posed in English and for the attorneys to understand the non-English answers. *Salim*, 855 F.2d at 947. This case should pose no greater problem.

*Id.* at 6-7. Should videoconferencing become necessary to effect the depositions, the Government should be prepared to advise the Court whether the procedures set forth by Judge Scola later in the Order quoted above will suffice and, if not, why not.

Finally, there is nothing that this Court can do about Venezuela's willingness or lack thereof to issue visas and official visas. Despite this Court's desire to provide Defendants with every reasonable opportunity to take the depositions of the Venezuelan witnesses, at some point, the trial in this matter must proceed.

This case was indicted on March 8, 2012. *See* D.E. 10. Originally, it was set for the trial period beginning May 7, 2012. *See* D.E. 60. It was subsequently continued and reset for the trial period beginning August 13, 2012. *See* D.E. 76. Because the case was reassigned to me in the intervening period, the case had to reset for the trial period beginning August 27, 2012. *See* 124. Defendant filed her Motion to Take Depositions [D.E. 133] on August 12, 2012, and requested a continuance of the trial date to accommodate the taking of depositions. The Court agreed and reset the trial period to begin on January 14, 2013. *See* D.E. 168.

On December 3, 2012, Defendant again requested a continuance to allow additional time for the depositions to be taken. *See* D.E. 209. At that time, Defendant explained, "Because the government has been advised that the necessary visas for attendance of the government's deposition

participants are unlikely to be issued until February 2013, given the current processing pattern between the USA and Venezuela, and in order to provide a window to allow for any unanticipated scheduling concerns upon issuance of government visas, the parties suggest a trial setting in May 2013. *Id.* at ¶ 2. Based on this filing, the Court understood that the Government had committed to and was in the process of obtaining the necessary visas for its prosecutors. During a March 7, 2013, Status Conference, however, the Court learned that that was not the case.

Having lost the time that Defendants mistakenly thought that the Government was working on obtaining the visas, understandably, Defendants now seek additional time within which to conduct the depositions. This Court finds that Defendants have shown good cause for a continuance of the trial to allow one last opportunity for Defendants to obtain the depositions. Therefore, the Court will continue the trial period and reset trial for the two-week period beginning on **Tuesday, September 3, 2013**. The depositions may occur any time up until **August 30, 2013**. Although the Court would like to accommodate Defendants' ability to take the depositions, this case must proceed to trial. Therefore, the trial will begin during the September 3, 2013, trial period or as soon thereafter as possible, regardless of whether the depositions have been completed. The Court finds that the ends of justice outweigh the interests of the public and Defendants in a speedy trial and therefore warrant the continuance. Accordingly, all time between now and the start of trial during the September 3, 2013, trial period shall be excludable time under the Speedy Trial Act.

To increase the chances of the depositions proceeding, Defendant shall, as soon as possible, provide the Government with the following information and, where applicable, documentation:

> (1) Defendant shall provide documentation that shows that the government of Venezuela either explicitly permits these depositions to proceed or acknowledges that it is aware of

these depositions and that no official permission is needed for them to occur;

(2) Defendants shall identify at least one Venezuelan official, or, if necessary, officials, who are authorized to administer an oath and verify the identity of the witnesses. The oath administered must be the oath normally administered to witnesses testifying in criminal trials in Venezuela. If no oath is administered to witnesses testifying in such trials, the oath administered must be equivalent to the oath administered to witnesses testifying in United States criminal trials. Each witness's identity must be verified using official, Venezuela government identification (for example, a passport). The official who administers the oath will serve as the person before whom the deposition is taken under Rule 30(b)(5) and will perform the duties listed in Rule 30(b)5);

(3) Defendants shall set forth the date(s), times, and location(s) of the depositions as soon as possible. If the dates and times need to be changed to accommodate the issuance of visas, that may occur, but Defendants must advise the Government of the new dates, times, and locations of the depositions immediately upon rescheduling them;

(4) Defendants shall arrange for at least two cameras at the depositions: one showing the deponent and another showing the entirety of the room where the deposition is occurring;

(5) Defendants shall identify the interpreter, stenographer, and videographers who will serve during the deposition.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 1st day of April 2013.

                                                                                    ROBIN S. ROSENBAUM
                                                                                    UNITED STATES DISTRICT JUDGE

copies:

Counsel of Record